SUSAN FROST *vs.* DAVID C. WELLS INSURANCE AGENCY, INC.
& another.[1]

Worcester. April 20, 1982. — August 6, 1982.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Workmen's Compensation Act,* Cancellation of insurance. *Insurance,*
Cancellation. *Notice. Practice, Civil,* Findings by judge.

Notice by an insurance company to the Division of Industrial Accidents
pursuant to G. L. c. 152, § 63, of the issuance of a policy of workmen's
compensation insurance, which was to be in force for a term of nine
months, did not have the effect of a notice that the policy would be ter-
minated on its expiration date and, in the absence of a second notice to
the Division that the policy had been terminated, it continued in force
by virtue of the provisions of c. 152, § 63. [306-309]
The record on a premature appeal by an insurance agency did not contain
findings which would have permitted this court to express its view
whether a binder of workmen's compensation insurance issued by the
agency was in force at the time the plaintiff was injured in the course
of her employment. [309-313]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 9, 1979.

The case was heard by *Meagher,* J.

*John A. Wickstrom* for Valerie Insurance Agency, Inc.

*William H. Clancy* for David C. Wells Insurance Agen-
cy, Inc.

*Timothy H. Donohue* for Westchester Fire Insurance
Company.

*David C. Williams* for Zurich-American Insurance Com-
pany, Inc.

*James M. Walsh* for the plaintiff.

---

[1] Valerie Insurance Agency, Inc.

DREBEN, J.  This action was brought by the plaintiff against her employer, two insurance companies, and two insurance agencies seeking a declaration as to which, if any, of the various defendants were liable to the plaintiff for injuries which occurred on August 10, 1976, during the course of her employment.  The complaint also asked for such other relief as might be appropriate.  A judge of the Superior Court held that on the date of the accident, the plaintiff's employer, Abdow's Quality Kitchen Cabinets, Inc. (Abdow), was not insured for workers' compensation coverage by either Zurich-American Insurance Company, Inc. (Zurich), or by Westchester Fire Insurance Company (Westchester) and declared that the plaintiff has claims only against the other defendants.

We note first that the appeals are interlocutory and hence are not properly before us.  As the claims of the plaintiff against the remaining defendants[2] have yet to be determined, the judgment being appealed "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties."  Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).  See *Pollack* v. *Kelly*, 372 Mass. 469, 476 (1977). Accordingly, the appeals must be dismissed.  *E. W. Foster Co.* v. *McLaughlin*, 7 Mass. App. Ct. 865 (1979).

Since there must be further proceedings, we note our views by way of dictum.  We consider the determination that Zurich did not insure Abdow for workers' compensation to be erroneous, but, on the record before us, are unable to determine whether Westchester, too, provided coverage for Abdow.

1. *Coverage by Zurich.*  The facts relevant to coverage by Zurich were stipulated.  On September 24, 1975, Zurich issued a workers' compensation insurance policy for a period of nine months and, on November 17, sent written notice of that fact to the Division of Industrial Accidents (Division)

---

[2] Only the two insurance agencies have appealed.  Abdow has not, and we have been informed that there is a separate pending action by the plaintiff against Abdow.

pursuant to G. L. c. 152, § 63. The notice stated that the policy was issued for a period of nine months. No other notice was sent to the Division by Zurich. In the absence of a statute or other rule, Zurich's coverage would have expired by the terms of the policy in June, 1976.

The question arises whether the coverage nevertheless remained in force by reason of G. L. c. 152, § 63, the relevant portion of which is set forth in the margin.[3] If § 63 requires an additional notice of termination, it, "rather than the policy fixes the scope of the insurance. That the rights of the employee cannot be narrowed by the contract of insurance between the employer and insurer is well settled." *Brewer's Case*, 335 Mass. 601, 604 n.1 (1957). Locke, Workmen's Compensation § 125 (2d ed. 1981).

Zurich argues that its November 17 notice was sufficient compliance with G. L. c. 152, § 63, and that no further notice was needed. We construe § 63 to require a separate notice of termination.

Section 63 requires that notice be given to the Division within five days of issuance of a workers' compensation policy, specifies that notice of renewal is not required, and further provides that insurance shall not be cancelled or "otherwise terminated until ten days after written notice of such . . . termination is given to the division . . . ."

Workers' compensation insurance is compulsory, and noncompliance carries with it severe penalties. *Brown* v. *Leighton*, 385 Mass. 757, 760 (1982), and cases cited. Under

---

[3] The second, third and fourth sentences of G. L. c. 152, § 63, as inserted by St. 1973, c. 403, read as follows: "Notice of issuance of a policy of insurance insuring employers under this chapter shall be given to the division of industrial accidents by the company issuing such policy within five days after the date of issuance thereof. No further notice need be filed in case such insurance is renewed, extended or otherwise continued by such company. Such insurance shall not be cancelled or shall not be otherwise terminated until ten days after written notice of such cancellation or termination is given to the division or until a notice has been received by said division that the employer has secured insurance from another insurance company or has otherwise insured the payment of compensation provided for by this chapter."

G. L. c. 152, § 25C, as amended through St. 1955, c. 174, § 5, the Division is empowered to "bring complaints against employers" for failing to provide coverage. Thus, knowledge of the facts concerning an employer's coverage is essential to the Division's enforcement responsibilities. Section 63 is designed to provide that information. If Zurich's contention were correct, not only would the Division's task be made more onerous by requiring it to keep a file of the dates of expiration of all employers' policies, but also the Division would be unable to ascertain from its records whether an employer had coverage. Since § 63 provides that notice of renewals or extensions need not be filed, notice of the date of expiration is not sufficient to determine whether an employer's coverage continues or has expired. We, therefore, reject Zurich's contention and conclude that an additional notice to the Division was required in order to terminate the policy on its expiration date.

That a second notice is required is also shown by the legislative history of § 63. On November 1, 1972, pursuant to G. L. c. 30, § 33, the Division made recommendations which resulted in the enactment of St. 1973, c. 403. Part 5 of the Division's recommendation accompanying the proposed statutory amendment indicates an intent that a separate notice of expiration be required. In relevant part, the recommendation, appearing in 1973 House Doc. No. 101, at 4, reads as follows:

> "An Act to relieve insurers of notifying the division of industrial accidents of the renewal of workmen's compensation policies.
>
> "At the present time each time a workmen's compensation policy is issued, renewed, expires or is cancelled, the insurance company must notify the Division, in writing, on each individual action. This present procedure[4] necessitates a tremendous amount of corre-

---

[4] Although G. L. c. 152, § 63, prior to its amendment in 1973, did not impose a requirement of notice of renewal, the Division by circular letter or otherwise required this information. See *Samagaio* v. *Davidson,* 6 Mass. App. Ct. 773, 777 (1979).

spondence being sent by the insurers and received by the Division each year. Under this amendment probably eighty per cent of this correspondence would be eliminated inasmuch as notification would have to be given only in those circumstances where a policy expires without renewal, is cancelled, or terminated in some other manner."

The recommendation also pointed out that the proposed amendment would permit "the Division to maintain a closer check on those employers who are not insured." *Ibid.*

Zurich's reliance on *Samagaio* v. *Davidson,* 6 Mass. App. Ct. 773 (1979), is misplaced. The insurance policy in that case was governed by G. L. c. 152, § 63, as in force prior to the 1973 amendment. There was then no statute providing that an otherwise effective cancellation or termination "would be vitiated by failure to report to the Division . . . ." *Id.* at 777. Section 63, as amended in 1973, is such a statute.

Authorities elsewhere also support the conclusion that coverage continues despite expiration of the policy when there has been no compliance with the statutory notice requirement. See *Zielke* v. *A.J. Marshall Co.,* 306 Mich. 474, 477 (1943); *Ives* v. *Sunfish,* 275 N.W.2d 41 (Minn. 1979); *Hamberger* v. *Wolfe-Smith Co.,* 205 App. Div. 739, 740 (N.Y. 1923); *Karstens* v. *Wheeler Millwork Cabinet & Supply Co.,* 614 S.W.2d 37, 41-42 (Tenn. 1981); 4 Larson, Workmen's Compensation § 92.30, at 17-16 through 17-18 (1982). Cf. *Traders & Gen. Ins. Co.* v. *Henderson,* 235 Ark. 896, 899, 900-901 (1962); *Travelers Ins. Co.* v. *Sanford,* 242 Ga. 324 (1978); *Maryland Cas. Co.* v. *H.A. Moss & Son,* 276 Mich. 219, 229, 230 (1936); *Paola* v. *Kennedy,* 59 R.I. 270, 274-275 (1937).

2. *Coverage by Westchester.* That Zurich covered Abdow on August 10, 1976, does not preclude simultaneous workers' compensation coverage by Westchester. See *Stoltz's Case,* 325 Mass. 692, 696-697 (1950). We consider, and again by way of dictum, the judge's ruling that West-

chester did not provide workers' compensation coverage on August 10, 1976.

The uncontroverted facts, either stipulated or found by the trial judge, relevant to Westchester's liability are as follows. In June, 1976, Abdow asked David Wells (Wells), president of David C. Wells Insurance Agency, Inc. (Wells, Inc.), to obtain workers' compensation insurance for Abdow. As Wells, Inc., was not authorized by any carrier to issue binders for such coverage, Wells discussed the needs of Abdow with one Edward Ford, an officer of Valeri Insurance Agency, Inc. (Valeri), with whom Wells, Inc., did business. Valeri was an independent agency with authority to bind Westchester. Ford agreed by telephone to bind the coverage and prepared and submitted to Westchester an application based on information supplied by Wells. Wells, Inc., wrote Abdow confirming that as of June 29, 1976, Abdow had workers' compensation coverage. On July 1, 1976, Ford sent the application to Westchester indicating, "We will consider [Abdow] bound . . . unless you advise to the contrary." By reply memo dated July 7, 1976, an underwriter of Westchester wrote to Ford, "Since we do not write any property lines, we would not be interested in writing the Workers' Compensation coverage."

Assuming, as Westchester contends, that this was a rejection,[5] the question arises whether Wells, Inc., as agent of Abdow was given any notice of rejection. Absent such notice to Abdow, or its agent, Wells, Inc., we consider that the binder remains in force. Wells, Inc., and hence Abdow, having been told by Ford that Abdow was covered, could reasonably assume that coverage continued until such time as Wells, Inc., or Abdow was informed to the contrary. *Rommel* v. *New Brunswick Fire Ins. Co.*, 214 Minn. 251, 264 (1943). See *Paola* v. *Kennedy*, 59 R.I. at 277. Cf. *Hartford Acc. & Indem. Co.* v. *Dalati*, 340 So.2d 732 (Miss. 1977). This is true at least until such time as the absence of

---

[5] The judge found the memo to be a statement that Westchester would not issue a policy.

a policy would reasonably have put Wells, Inc., or Abdow on notice that a problem existed. See *DeCesare* v. *Metropolitan Life Ins. Co.*, 278 Mass. 401, 406 (1932). Westchester obviously recognized the need to inform *someone* that coverage did not exist because it was stipulated that "Westchester's policy regarding declination was that an application would remain bound for at least five days following declination to allow the agent to place the risk elsewhere." This policy would have little meaning if the term "agent" referred only to Westchester's own agents, e.g., Valeri. *Rommel* v. *New Brunswick Fire Ins. Co.*, 214 Minn. at 264.

Whether Valeri, through Ford, told Wells, Inc., that coverage had been refused by Westchester prior to five days before the accident was a matter seriously disputed at trial. While Wells claimed that neither he nor anyone at Wells, Inc., was told of the rejection before 4:00 P.M. on August 6, 1976, Ford testified that he had informed Wells, Inc., of Westchester's rejection of the risk on July 8th or 9th. The question is one of credibility and is, therefore, a question of fact for the trial judge to resolve. Unfortunately, by allowing proposed findings nos. 2 and 3 of Wells, Inc., set forth in the margin,[6] and by allowing proposed finding no. 15 of Westchester, also set forth in the margin,[7] the judge made

---

[6] Proposed findings of Wells, Inc.:

"2. Neither Westchester Fire Insurance Company nor anyone from the Valeri Insurance Agency notified the defendant David C. Wells Insurance Agency, Inc. that the workmens compensation coverage for Abdow's Quality Kitchen Cabinets, Inc. had been terminated prior to a telephone call from Mr. Ford on the afternoon of August 6, 1976.

"3. The telephone call to David C. Wells on August 6, 1976 was not sufficient to result in immediate termination of workmens compensation coverage both in view of the standard provision requiring ten days notice of cancellation and the company policy of giving at least five days notice of cancellation."

[7] Proposed finding no. 15 of Westchester:

"Valeri notified Wells on July 8, 1976 or July 9, 1976 that Westchester had declined Abdow's application for workmen's compensation coverage."

inconsistent[8] findings[9] on the issue, and we are unable to determine whether any notice was, in fact, given to Wells, Inc. prior to August 6, 1976.

Although the trial judge ruled that Valeri's binder of Abdow's application was binding on Westchester (plaintiff's proposed ruling no. 3), he did not explain why he held Westchester no longer bound on August 10, 1976. As we indicated above, if no notice was given to Wells, Inc., prior to August 6, this ruling was incorrect, particularly in view of Westchester's stipulated policy of giving five days' grace to enable placement of the risk elsewhere. If notice was given to Wells, Inc., on July 8 or 9, additional findings may be necessary to determine whether, on the facts of this case, the notice provisions of the standard policy governing cancellation were made applicable to Westchester's binder. While that question ultimately may be one of law, compare *DeCesare* v. *Metropolitan Life Ins. Co.*, 278 Mass. at 406 with 17 Couch, Insurance § 67.2 (2d ed. 1967), the facts may determine the outcome. In resolving those issues which require additional findings and rulings, the trial judge may, in his discretion, hear additional evidence.

---

[8] The denial of proposed ruling no. 8 of Westchester is also inconsistent with the allowance of Westchester's proposed finding no. 15. Proposed ruling no. 8 reads as follows:

"The evidence in this case requires the finding that the defendant, Valeri Insurance Agency, Inc., on or about July 8, 1976 or July 9, 1976, notified the defendant, David C. Wells Insurance Agency, Inc., that the defendant, Westchester Fire Insurance Company, had rejected the application for the issuance of a workmen's compensation insurance policy to the defendant, Abdow's Quality Kitchen Cabinets, Inc."

[9] At oral argument counsel agreed that Westchester's proposed finding no. 15 and proposed finding no. 2 of Wells, Inc., were inconsistent and they subsequently filed a stipulation that those findings "both as allowed by the [judge] may be vacated and stricken as being inherently inconsistent." Even in the absence of such a stipulation we would consider the findings inconsistent.

The decision whether Westchester, as well as Zurich, provided coverage for Abdow need not precede the plaintiff's going forward on her claim against Zurich.

For the reasons previously given, the appeals are dismissed.

*So ordered.*