ROBERT J. MATTHEWS'S (dependent's) CASE.

No. 88-P-1280.

Suffolk. December 12, 1988. — February 17, 1989.

Present: GREANEY, C.J., ARMSTRONG, & BROWN, JJ.·

*Workmen's Compensation Act,* Amount of compensation, Exhaustion of administrative remedies.

In a workmen's compensation case, an order entered pursuant to G. L. c. 152, § 7, under which the insurer began making payments, was not a final decision until the insurer withdrew its request for a hearing under G. L. c. 152, § 8, with the result that the provisions of G. L. c. 152, § 51A, were not applicable to the claim. [13-15]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was reported by *Brown, J.*

*Leonard Y. Nason* for the claimant.

*Leonard F. Zandrow, Jr. (Thomas P. O'Reilly* with him) for the insurer.

BROWN, J. The claimant (widow of the employee) has appealed from the reviewing board's decision affirming the single member's decision, which had rejected the applicability of G. L. c. 152, § 51A, to her claim.[1] The matter was reported to a panel of this court pursuant to the Standing Order Implementing the Interim Rule for Processing Appeals to a Single Justice in Workers' Compensation Cases (1987).

Matthews had worked for over thirty years for United Shoe Machinery Company. On June 18, 1982, he experienced some

---

[1] General Laws c. 152, § 51A, inserted by St. 1969, c. 833, § 1, provides as follows: "In any claim [for workers' compensation] in which no compensation has been paid prior to the final decision on such claim, said final decision shall take into consideration the compensation provided by statute on the date of the decision, rather than the date of the injury."

discomfort at work; later that night, after feeling chest pain at home, he went to the hospital and was diagnosed as having suffered a myocardial infarction. The employee died one month later.

The widow's claim for compensation was filed with the Department (then "Division") of Industrial Accidents on January 14, 1983. A conference pursuant to § 7 of G. L. c. 152 was held on September 26, 1983, and an order of payment was filed on October 13, 1983. There is no dispute (although it is not in the statement of agreed facts) that on October 14, 1983, the insurer began making the payments ordered.

The insurer filed a timely request for a hearing pursuant to § 8 and the matter was scheduled for a full hearing before a single member on January 17, 1985. The insurer withdrew its request for a hearing prior to the commencement of the hearing.

In these circumstances the claimant asserts that, under § 51A, she is entitled to have her widow's benefits computed at the higher rate in effect October 13, 1983, rather than at the lower rate in effect on the date of the injury in 1982. The instant case presents the circumstances this court referred to in *Gordon's Case*, 26 Mass. App. Ct. 924, 926 (1988):

> "[t]hat the result would arguably have been different had [the self insurer] paid the benefits ordered by the single member and then withdrawn its appeal . . . ."

Whether in fact the result would be different is the question to be answered here.

The parties disagree whether a § 7 conference order can be a "final decision" under § 51A. The Supreme Judicial Court has held that a § 7 order is interlocutory and not appealable on the merits. *Assuncao's Case*, 372 Mass. 6, 9-11 (1977). *Gordon's Case* took pains to point out that a § 8 order, coming after an evidentiary hearing and a decision containing subsidiary and general findings, can become a final decision on the claim. A § 7 conference order does not have the attributes of a § 8 hearing; it "is relatively informal, and any evidence, written or oral, is not given under oath." *Manoli's Case*, 12

Mass. App. Ct. 222, 223-224 (1981). If a § 7 order is not a final decision, § 51A would not apply. On the other hand, as the employee points out, in *Bernardo's Case*, 24 Mass. App. Ct. 48 (1987), this court chose to interpret a § 7 order which had not been contested by the insurer. In *Bernardo's Case*, the issue was the date to be used to determine the maximum benefits the employee could receive pursuant to the § 7 order.[2]

Of course, in the present case, the insurer made payment pursuant to the § 7 order even as it requested a hearing under § 8. Only when the insurer withdrew its request, could the § 7 order become final. Section 51A applies to the claim "in which no compensation has been paid prior to the final decision on such claim." See *Gordon's Case*, 26 Mass. App. Ct. at 925-926. See also *Hanson's Case*, 26 Mass. App. Ct. 988, 988 (1988). Here compensation was paid before the insurer withdrew its request.

The employee's suggestion, that when the insurer withdrew its request the § 7 order became final retroactive to the date it was issued, is inconsistent with the policy rationale discussed in *McLeod's Case*, 389 Mass. 431, 435 (1983):

> "We think it more likely that G. L. c. 152, § 51A, reflects a legislative intent to avoid obsolescence of compensation rates by requiring benefits to be computed in accordance with the statutory rate in effect at the time of the final decision, when no payments have been made during the period the claim has been contested."

Contrast *Biagini's Case*, 26 Mass. App. Ct. 952, 952-953 (1988). The employee's suggestion would also encourage insurers needlessly to prosecute appeals they otherwise might have abandoned following an adverse decision at one stage of the c. 152 proceedings. In the present circumstances § 51A

---

[2] This court went on to say: "Because there is nothing pending before the board . . . and because resolution of the question requires no expertise peculiar to the board . . . , we decide the appeal." *Bernardo's Case*, 24 Mass. App. Ct. at 50.

does not apply and we affirm the decision of the reviewing board.

*So ordered.*